Den ex Dem. The American Primitive Society v. Pilling et al.

DEN EX DEM. THE AMERICAN PRIMITIVE SOCIETY, OF PATERSON, v. JOHN PILLING ET AL.

1. A congregation or inferior ecclesiastical corporation which, by its organization, is connected with and subject to the superior jurisdiction of the church to which it belongs, cannot, by the act of the corporation, or a majority, secede from the denomination, declare themselves independent, and take their corporate property with them.

2. Who are members or officers of a church is determined by the constitution of the church and the ecclesiastical courts of the church.

3. No new election of trustees of a congregation or religious society, whose trustees are elected under the statute for one year, can be made during the year, unless the officers have been properly removed.

4. The election of the trustees of a religious society must be held at their usual place of meeting.

This was an action of ejectment brought to recover the possession of a church at Paterson. There was no dispute as to the title of the church—that it belonged to a corporation bearing the name of the lessors of the plaintiff. The only question to be decided was whether the persons who brought the action as such corporation, or the defendants, were the legal trustees over the corporation.

The cause was tried at Passaic circuit, and a verdict was rendered subject to the opinion of the court on a state of the case agreed upon.

Argued before Justices ELMER, HAINES, and OGDEN. Mr. Hopper and Mr. W. Pennington, for plaintiffs, and Mr. Zabriskie and Mr. A. S. Pennington, for defendants.

The opinion of the court was delivered by

ELMER, J.    When this cause came on to be tried at the circuit, a verdict was entered by consent for the defendants, subject to the opinion of the court upon an agreed case. The corporation being the lessor of the plaintiff, and the title to the property in dispute being admitted to be in such lessor, the plaintiff would be entitled to the verdict and judgment, had not the parties expressly agreed that the question intended to be submitted to the court is, which set of trustees were legally entitled to the office when the suit was commenced; and that if the court shall be of opinion that the trustees elected on the twentieth of January, 1849, were the legal trustees, then the verdict is to be entered for the plaintiff, but if the court shall be of opinion that the defendants were legally the trustees and entitled to the possession of the property, then the verdict and judgment are to be entered for the defendants.

It appears that in the year 1841, a religious society in Paterson, duly elected trustees, who became incorporated by the name of " The American Primitive Methodist Society of the town of Paterson," pursuant to the act of 1799, to incorporate trustees of religious societies, which so far as the matters now in dispute are concerned, was the same as the existing act.  *Rev. Stat.*, 153.   In the year 1845, a deed was made to them by their corporate name, for the premises in dispute, which contains a proviso that the land is given for the purpose of erecting and building, maintaining, keeping and using a Primitive Methodist church or house of public worship, and for no other purpose whatsoever, under penalty of forfeiture to the grantors of the said land, which in such case shall revert to the grantors.  At the time of the incorporation and of the making of the deed, and for several years after, the society was in connection with the annual conference of the Primitive Methodist church, sometimes called the New York Conference, received from it their minister, and was represented there by delegates.   A new election of trustees took place in Novem-

ber, 1847, before any division in the society, at which seven trustees were elected, who were sworn and acted as such, without dispute, three of whom are the persons now made defendants. In January, 1848, a meeting of the society was held in the church, at which resolutions were unanimously adopted, "that we consider ourselves an injured people by the New York Conference, and that we withdraw from their connection and remain the American Primitive Methodist Society of the town of Paterson, New Jersey." These resolutions were sent to the committee of the conference, and since their adoption the society has had no connection with it, and their minister, John Pilling, has acted independently. In November, 1848, another election of trustees was regularly held in the church by the society, and the defendants were elected, took the oaths prescribed by the statute, and were acting as trustees, holding the possession of the property as such, when this action was commenced.

By the book containing the doctrine and discipline of the Primitive Methodist church, adopted in 1838, and made a part of the case, it appears that the highest ecclesiastical body of this denomination of Christians is the annual Conference, which appoints a committee, called "the Connectional Committee," whose duty is to "attend to the general affairs of the connection between the sittings of the Conference." In 1848, the Conference for the first time adopted a constitution for the churches in their connection, and resolved that the committee refuse their sanction to build any new church, unless this constitution is adopted. No constitution was ever adopted by the Paterson society. The committee, at a meeting held in December, 1848, took up the subject of the Paterson society, and resolved that they recognize James Peel, junior, and Thomas Sykes, and all others of the Paterson members who will abide by their discipline, as members of the Primitive Methodist Church or society in Paterson, and of the connection generally, and authorized the two persons named to demand possession of the church. Subsequently, during the same month, at another meeting of the committee, it was resolved that

Alexander Miller go to Paterson, in the capacity of connectional delegate, with full power to settle the affairs connected with the church in that place; that he demand the keys, and in case of refusal, take legal steps to obtain full and complete possession. They further resolved, that all who will abide by the discipline, with the exception of John Pilling and Richard Hampshire, be received as members. Mr. Miller proceeded to Paterson on this business, and met Mr. Pilling, the president of the trustees, and others, together with several members of the church. They refused to organize a meeting. He then delivered to them a letter, directed to the defendants and others, acting as trustees for the religious society under the care of Mr. John Pilling, informing them of his appointment, and demanding possession of the house. Some of them answered that they had nothing to do with the Conference, and refused to deliver up the property. He then, at the request of the five persons afterwards elected as trustees, wrote a notice for a meeting of the male members of the church, to be held at the house of George Smith, less than a quarter of a mile from the church, for the election of trustees, and placed the same on the door of the church, twelve days before the time of meeting, and at the said time and place, January 20th, 1849, five persons, namely, James Peel, junior, James Peel, senior, Thomas Sykes, George Smith, and William Smith, attended and proceeded to an election. The five persons last named were elected, and took the oath of office as trustees of the society. The door of the church was locked, and the key in the possession of the party acting with Mr. Pilling, but it is not stated that the key or the use of the church to hold the election were asked for, except so far as the demand in Mr. Miller's letter may be so regarded.

On behalf of these five last named persons, who claim to be the legal trustees of the society, and entitled to the possession of the property as such, to the exclusion of the defendants, it is now contended that the act of the society, including the defendants, in withdrawing from their connection with the annual or New York Conference, to which

from their first organization until this time they had belonged, was a secession from the regular government of the Primitive Methodist Church, whereby all who participated in it and were not afterwards received, ceased to be members of the church, so that any proceeding afterwards to elect trustees by them was wholly void, or, at least, that they were thereby so far disqualified from electing trustees, or acting as such, that the conference, or their committee, or delegate, had a right at any time to supersede them and cause others to be chosen who remained subject to their government. The case relied on to support this view of the subject, is that of *Den* v. *Bolton*, 7 *Hal.* 206.

For the defendants it is insisted, that the Paterson society was not bound to submit to the conference, and was at liberty at any time to withdraw from it, without in any way affecting their civil rights, inasmuch as they had never adopted a written constitution, or bound themselves to acknowledge its government. In my opinion, no written constitution or positive agreement to continue under the government of the conference was needful. I am not aware that other denominations of Christians in this state, whose societies are incorporated by virtue of the general act, have usually such constitutions. Their connection with the ecclesiastical authorities having the rule over them, is inferred from the circumstances of each case. It was so in the case of *Den* v. *Bolton*, and in the much litigated case of *Hendrickson* v. *Decow, Sax.* 577, involving the legal effect of the division in the Society of Friends. A similar doctrine has been held in the case of *Harmon* v. *Dreher*, 1 *Speer Eq. R.* 87 ; *German Reformed Church* v. *Com.*, 3 *Barr.* 282 ; *Baker* v. *Fales*, 16 *Mass. R.* 503 ; *The People* v. *Steele*, 2 *Barb. S. C. R.* 399.

It appears from the case submitted to us, that some of the American Primitive Methodist Churches were organized on the congregational or independent plan ; but that most of them, including that at Paterson, were connected with and subject to the government of the Annual Conference. Such being their chosen situation from the beginning of their organiza-

tion, every individual member entered into the society under the implied condition that this connection would continue; and so when the society was incorporated, the corporation appears to have been constituted to represent, in respect to its civil rights, a Primitive Methodist Society, under the government of the conference, and not a congregational or independent society. Individual members undoubtedly were at perfect liberty, if they conscientiously believed they were, as they said, injured by the conference, to withdraw from it, subject, of course, to such action of that body as according to its discipline and usages it had power to take; but their right to carry with them their corporate and property rights, is a different question, not necessarily involved in this case as it now stands.

The defendants were elected trustees, after they had resolved to secede, but before the conference or their committee had in any way disowned them. Notwithstanding their resolution to secede, they remained subject to the conference until that body, or its committee, took some action. Such was the decision in the case of *Den* v. *Bolton*, and in the case of *Doremus* v. *The Dutch Reformed Church*, 2 *Green C. R.* 332. In the case of *Den* v. *Bolton*, the corporation was not a set of trustees, chosen by the members of a religious society, agreeably to the first ten sections of the act of 1799, as this is, but under the provisions of the twelfth and succeeding sections, the minister, elders, and deacons, of a particular Reformed Dutch congregation were *virtute officii* the trustees, and as such an incorporated body. The defendants in that case having seceded from the regular judicatories to which they had previously belonged, they were cited before them and suspended from their offices, and subsequently other persons were in due manner constituted the minister, elders, and deacons of the same congregation, comprising such members of the original congregation as did not secede, or as returned to their former allegiance. The decision of the court was, that it belonged to the proper judicatories of the church to decide who are the spiritual officers of any particular congregation, subject to

their dominion; that the statute having vested the office of trustees in such spiritual officers, without any further designation, the court was bound to respect their decision; and that to determine the question who were legally such trustees, it had only to ascertain who had been constituted such officers, by the governing power of the church, according to its own rules.

In the case now before us, the governing power of the church has no power to determine who shall be trustees; they are required to be elected from among the members of the society or congregation, by a plurality of voices of such of the said society or congregation as are present at a meeting held at their usual place of meeting for public worship, after notice in the manner prescribed. The trustees so elected, hold their offices until removed by others being elected in a similar manner; but such removal cannot take place in less than one year after their election. Even if a disqualified person be elected, or there be some irregularity in the election, the corporation will not necessarily be dissolved, but the persons who are *de facto* officers may act, and their acts will be valid until they are lawfully ousted. 2 *Green C. R.*, 349. The law under which these trustees were elected does not prescribe who shall be considered members of the congregation or society; but as was said by Chief Justice Ewing, in the case of *The State* v. *Crowell*, 4 *Hal.*, 411, wisely leaves that question to be determined by the rules of each religious denomination. According to the book of discipline before referred to, page fifteen, trustees of the Primitive Methodist Churches are to be elected by the male members of the church or society, over the age of twenty-one years. Now it may be true, that the mere act of uniting himself to another congregation would, in some circumstances, deprive a particular member of a right to vote, because by his own act he had voluntarily withdrawn from that particular society, as was held in *Com.* v. *Woelper*, 3 *Serg. & R.*, 29, and upon the same principle that members who ceased to contribute to its necessary expenses, were held to have deprived themselves of the right to vote, in the

case of *The State* v. *Crowell*. But in this case the resolution to withdraw was the act of the society itself, adopted by a unanimous vote of all the members present at the meeting. The society still retained its identity, and those who previous to this act were members remained members until some proceeding took place whereby they voluntarily separated themselves from it, or until they were regularly displaced by the act of those having authority by the rules of the church to do it. If this be not so, the consequence would be that by the mere act of withdrawal from the conference, the corporation was dissolved and its property forfeited.

It cannot be doubted, I think, that the defendants were duly elected trustees, and must continue to be so, unless they have been duly removed. Three of them were elected and sworn previous to the vote to withdraw from the conference, so that even if it was admitted that the subsequent election was illegal, their offices remained. It was held in *The Doremus case,* that when the original title of an office is sufficient, though good cause of amotion be shown, even in a case where the charter declares that for such cause of amotion the officer shall vacate his office, the office is not determined until there be an amotion.

But it is insisted on behalf of the plaintiff, that the election held January 20th, 1849, under the direction of Mr. Miller, the delegate of the connectional committee, removed the defendants from office, and substituted the five persons then acting with him. Admitting that the notice of the meeting was regularly given, and that the proceedings of the committee in the preceding December amounted to such a disownment of the members who participated in the act of secession, as prevented them from afterwards being recognized as regular members of the Paterson society, as to which no opinion is meant to be intimated, it is a fatal objection to the proceeding that the meeting to elect was not held at the usual place of meeting for religious worship. This is not in express terms required by the fourth section of the act which provides for perpetuating the trustees, but

such is its obvious meaning, and so it was held in the case of *Miller* v. *English*, 1 *Zab.*, 317. That the door was locked, and those having control of it probably would not permit access to it, was no sufficient excuse for meeting at a private house at a considerable distance. It does not appear that the key was requested. If it could not be had, the meeting should have been held in the nearest practicable place, as for instance at the door, as appears to have been done in the case of *The State* v. *Crowell*, and the facts should have been satisfactorily shown. If the election held in November was regular, as in my opinion it was, the persons then elected could not be removed by the election of others, until a year had elapsed. No vacancy is alleged to have been occasioned by the death, resignation, or removal of any of them.

In the case of *The People* v. *Steele*, to which we were referred by one of the plaintiffs' counsel, it was held, that where trustees of a religious society connected with the Methodist Episcopal Church, refused to permit a preacher regularly appointed by the Bishop to preach in the Church under their care, a writ of mandamus was a proper remedy to compel them to admit him. If the application now was to allow such a writ to require the defendants to admit a preacher appointed by the conference, this case would be in point. Whether this court would sanction such a use of that writ, it is not necessary now to inquire. It cannot be doubted, however, that the trustees of all religious societies hold the property subject to its appropriate use, and have no legal right to determine when the religious meetings shall be held, or who shall officiate, unless such power is given to them by the rules and discipline of the denomination to which they belong, and that they may be compelled by proper proceedings at law, or in equity, to fulfill their duty. But the question now presented is very different. It is merely who are the legal trustees, and not whether those persons who claim to be such, have properly executed the duties of their office. I am clearly of opinion, that the persons who are named as defendants were, when this suit was

commenced, the legal trustees of the society, and entitled as such to the possession of the property, and that in conformity with the agreement of the parties, the verdict and judgment must be entered for them.

OGDEN and HAINES, J. J., concurred.